**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LENNON IMAGE TECHNOLOGIES, LLC | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 2:13-CV-235-JRG |
| MACY'S INC., et al. | § | |
| _____ | § | |
| | § | |
| LENNON IMAGE TECHNOLOGIES, LLC | § | |
| | § | |
| v. | § | CASE NO. 2:13-CV-239-JRG |
| | § | |
| LUXOTTICA USA | § | |
| | § | |

**CLAIM CONSTRUCTION
MEMORANDUM AND ORDER**

On July 29, 2014, the Court held a hearing to determine the proper construction of the disputed claim terms in United States Patent No. 6,624,843.  After considering the arguments made by the parties at the hearing and in the parties' claim construction briefing (Dkt. Nos. 78, 85, and 86),[1] the Court issues this Claim Construction Memorandum and Order.

---

[1] Citations to documents (such as the parties' briefs and exhibits) in this Claim Construction Memorandum and Order refer to the page numbers of the original documents rather than the page numbers assigned by the Court's electronic docket.

**Table of Contents**

BACKGROUND ................................................................................................................ 3

LEGAL PRINCIPLES ..................................................................................................... 4

THE PARTIES' STIPULATED TERMS.......................................................................... 6

CONSTRUCTION OF DISPUTED TERMS .................................................................. 6

    A.  "captures/capturing the customer image" .......................................................... 6

    B.  "storing the customer image"............................................................................. 13

    C.  "retrieving the customer image" ....................................................................... 20

    D.  "body type" ........................................................................................................ 21

CONCLUSION ............................................................................................................... 22

APPENDIX A ................................................................................................................. 23

## BACKGROUND

Plaintiff brings suit alleging infringement of United States Patent No. 6,624,843 ("the '843 Patent").  The '843 Patent, titled "Customer Image Capture and Use Thereof in a Retailing System," issued on September 23, 2003, from an application filed on December 8, 2000.  The '843 Patent bears a priority date of December 10, 1999.  The Abstract of the '843 Patent states:

> In a retailing system, an image capture system is provided and used to capture reference images of models wearing apparel items.  At a retailer's place of business, an image capture system substantially identical to that used to capture the reference images is also provided.  A customer has his or her image captured by the image capture system at the retailer's place of business.  Subsequently, when the customer is in close proximity to an image display area within the retailer's place of business, a composite image comprising the customer's captured image and one of the reference images may be provided.  The composite image may comprise full motion video or still images.  In this manner, the customer is given the opportunity to virtually assess the selected merchandise without actually having to try on the apparel.

The '843 Patent contains two independent claims, Claim 1 and Claim 14.  Plaintiff asserts Claims 1, 4-6, 9, 12, 14, 15, 17, and 18.  (*See* Dkt. No. 60 at 1; *see also* Dkt. No. 78 at 1.)

The '843 Patent has been the subject of two *inter partes* review ("IPR") petitions at the United States Patent and Trademark Office ("PTO").  (*See* Dkt. No. 78 at 1-2.)  First, the so-called "Lumondi" petition resulted in the PTO's Patent Trial and Appeal Board ("PTAB") instituting an IPR that ended with a settlement in March 2014.  The second, filed by Defendants in the above-captioned cases, was filed on April 8, 2014, and the PTAB has not yet reached a decision on whether to institute an IPR.  A Patent Owner Preliminary Response to Petition for *Inter Partes* Review of the '843 Patent was filed on July 14, 2014.  (Dkt. No. 92 at Ex. B.)

The '843 Patent is also the subject of an *ex parte* reexamination in which the PTO entered a non-final office action on July 3, 2014, setting forth a new rejection and finding none of the claims allowable.  (*See* Dkt. No. 92, Ex. A, 7/3/2014 Office Action in *Ex Parte* Reexamination.)

## LEGAL PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To determine the meaning of the claims, courts start by considering the intrinsic evidence.  *See id.* at 1313; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  The intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1314; *C.R. Bard*, 388 F.3d at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.  *Phillips*, 415 F.3d at 1312-13; *accord Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms.  *Phillips*, 415 F.3d at 1314.  First, a term's context in the asserted claim can be very instructive.  *Id.*  Other asserted or unasserted claims can aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent.  *Id.*  Differences among the claim terms can also assist in understanding a term's meaning.  *Id.*  For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation.  *Id.* at 1314-15.

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)).  "[T]he specification 'is always highly relevant to the claim construction analysis.

Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *accord Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow claim scope.  *Phillips*, 415 F.3d at 1316.  In these situations, the inventor's lexicography governs.  *Id.*  The specification may also resolve the meaning of ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  *Teleflex*, 299 F.3d at 1325.  But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims."  *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent.  *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").  "[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance."  *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language."  *Phillips*, 415 F.3d at 1317

(citations and internal quotation marks omitted). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## THE PARTIES' STIPULATED TERMS

The parties have reached agreement on a construction for several terms, as stated in their May 6, 2014 Joint Claim Construction and Prehearing Statement Pursuant to P.R. 4-3 (Dkt. No. 60 at 2) and their July 15, 2014 Patent Rule 4-5(d) Claim Construction Chart (Dkt. No. 90 at Ex. A). The parties' agreements are set forth in Appendix A to this Claim Construction Memorandum and Order.

## CONSTRUCTION OF DISPUTED TERMS

Shortly before the start of the July 29, 2014 hearing, the Court provided the parties with preliminary constructions of the disputed terms with the aim of focusing the parties' arguments and facilitating discussion. Those preliminary constructions are set forth within the discussion of each term, below.

## A.  "captures/capturing the customer image"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Alternatively:<br>    "putting the customer image in a form that a computer can use or read" | "to enter a customer image into a computer for processing or storage" |

(Dkt. No. 78 at 11; Dkt. No. 85 at 10.)  The parties submit that this disputed term appears in Claims 1 and 14 of the '843 Patent.  (Dkt. No. 78 at 11.)

Shortly before the start of the July 29, 2014 hearing, the Court provided the parties with the following preliminary construction: "Plain meaning (Expressly reject Defendants' proposal of requiring entry into a computer)."

(1)  The Parties' Positions

Plaintiff submits that the meaning of the constituent term "customer image" is not in dispute and that "captures/capturing" "is readily understood by one of ordinary skill in the art" and requires no construction.  (Dkt. No. 78 at 12.)  Plaintiff also notes that although the petitioner in the Lumondi IPR requested construction of this disputed term, the PTAB has not construed it.  (*Id.* at 12-13.)  Alternatively, Plaintiff proposes a construction that is based on an extrinsic dictionary definition, quoted below.  (*Id.* at 13.)  Plaintiff argues that "Defendants' proposed construction should be rejected because it confuses the 'storing' step with the 'capturing' step" and also because it "relies on teachings from the specification regarding capturing *reference* images, not *customer* images."  (*Id.* at 14.)

Defendants respond that although the phrase "customer image" requires no construction, the disputed term "requires construction in order to clarify that 'capturing' the customer image is different from 'storing' the customer image as described and used in the specification and the

claims."  (Dkt. No. 85 at 10.)  Defendants cite disclosure regarding the illustration of "Obtain

Customer Image(s)" in Figure 4 of the '843 Patent, and Defendants also cite extrinsic dictionary

definitions of "capture," quoted below.  (*Id.* at 11-12.)

Plaintiff replies that despite Defendants' reliance on the word "obtain," Defendants omit

that word from their proposed construction.  (Dkt. No. 86 at 2.)  Plaintiff also argues that

Defendants' proposed construction is incorrect because it "begins with the phrase 'to enter . . .

into a computer' which indicates storage is occurring at the point of capture."  (*Id.* at 3.)

At the July 29, 2014 hearing, Plaintiff further urged that Defendants' proposed

construction tends to confuse rather than clarify because the word "entering" could be read as

implying that the image already exists.  Defendants responded by reiterating that construction is

necessary to distinguish "capturing" from "storing."

(2)  Analysis

The parties agree that "capturing" an image involves a computer, but the parties disagree

on whether the disputed term requires entering the image into a computer or instead merely

putting the image into a form that a computer can use.  Also, although Plaintiff submits that no

construction is necessary and although the PTAB has not construed the presently disputed term,[2]

the parties have presented a "fundamental dispute regarding the scope of a claim term," and the

Court has a duty to resolve that dispute.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521

F.3d 1351, 1362-63 (Fed. Cir. 2008).

Claim 1 of the '843 Patent recites (emphasis added):

---

[2] (*See* Dkt. No. 78, Ex. B, IPR2013-00432, Paper 9, 1/14/2014 Decision at 5-7 (construing only
"apparel style image" and "trigger device . . . that detects the presence of the customer and, in
response, causes the composite image to be displayed").)

1.  An apparatus for manipulating a customer image corresponding to a customer, comprising:

a controller;

an image capture system, coupled to the controller, that *captures the customer image* of the customer and provides the customer image to the controller;

a database, coupled to the controller, for storing the customer image and at least one apparel style image corresponding to a potential purchase item; and

an image display system, coupled to the controller, for displaying a composite image comprising the customer image and any one of the at least one apparel style image thereby allowing the customer to assess the potential purchase item without having to try it on.

As the parties agree, the specification discloses image "capture" in the context of

computer systems:

The system 100 comprises a controller 102 coupled to an image *capture* system 104, databases 106, an image display system 108, a public communication network 110, a private communication network 112 and one or more trigger devices 116.  The controller 102 may comprise one or more computers or servers capable of executing software instructions stored in memory (e.g., volatile or non-volatile digital storage devices) via a suitable processor (e.g., microprocessor, microcontroller, digital signal processor or the like or combinations thereof).  As described in greater detail below, the image *capture* system 104 comprises one or more image *capture* devices, such as at least one full motion video camera or at least one still image camera, or a combination thereof.  In a preferred embodiment, the image *capture* devices provide a digital signal output, although an analog output that is subsequently converted to digital form may also be used.  The controller 102 is coupled to databases 106 for the storage of images *captured* by the image *capture* system 104.

* * *

At step 204, one more customer images [*sic*, one or more customer images] are *captured*.  Note that both the reference images and the customer images may comprise full motion video or still images.

* * *

In order to *capture* the customer's image at step 406, the customer walks along the runway of the controlled environment.

'843 Patent at 3:8-27, 4:19-22 & 6:29-31 (emphasis added).  The specification also demonstrates that "customer" images are distinct from "reference" or "apparel style" images.  *See id.* at 3:30, 4:15-22 & 5:62-63.

Figure 4 of the '843 Patent illustrates a step of "Obtain Customer Image(s)" and is reproduced here:



FIG. 4

Nonetheless, the specification neither defines the word "obtain" nor demands that the term "capture" be deemed synonymous with the word "obtain."

On balance, the intrinsic evidence demonstrates that the '843 Patent uses "capture" in a broad sense. In particular, "capture" is not limited to entry into a computer, as Defendants have proposed, because the specification discloses that "[i]n a preferred embodiment, the image capture devices provide a digital signal output, although an *analog* output that is *subsequently converted* to digital form may also be used." '843 Patent at 3:22-25 (emphasis added).

As to the extrinsic evidence, Plaintiff has cited a dictionary that includes a definition of "capture" as meaning "the act of putting information in a form that a computer can use or read." Dkt. No. 78, Ex. K, *Merriam-Webster* (http://www.merriamwebster.com/dictionary/capture). Defendants properly counter that this definition from an online dictionary is not contemporaneous with the date of the invention and therefore should not be considered. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 816 (Fed. Cir. 2007) (noting with disfavor that "the district court chose to rely exclusively on a general dictionary that was not contemporaneous with the patent").

Defendants, for their part, have cited a dictionary definition of "capture" as meaning: "Cause (data) to be entered into a computer." Dkt. No. 85, Ex. 7, *Shorter Oxford English Dictionary* 342 (5th ed. 2002). Defendants have also submitted a dictionary definition cited by Plaintiff, in the parties' Joint Claim Construction and Prehearing Statement, that defines "capture" as: "In communications, to transfer received data into a file for archiving or later analysis." *Id.*, Ex. 8, *Microsoft Computer Dictionary* 84 (5th ed. 2002); *see* Dkt. No. 60, Ex. B at 1 ("Plaintiff's Identification of Intrinsic and Extrinsic Evidence").

This extrinsic evidence, however, does not warrant limiting the broad meaning of "capture" that is apparent from the specification, as noted above. *See Phillips*, 415 F.3d at 1317 ("[W]hile extrinsic evidence can shed useful light on the relevant art, we have explained that it is

less significant than the intrinsic record in determining the legally operative meaning of claim language.") (citations and internal quotation marks omitted); *see also id.* at 1319 ("[E]xtrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence.").

Further, although the parties agree that the '843 Patent uses the term "capture" in the context of computer systems, this context is apparent on the face of the claims and need not be included in the construction of "capturing the customer image."

Finally, as to Defendants' argument that construction is necessary to distinguish "capturing" from "storing," that distinction is made apparent by the Court's construction of the term "storing the customer image," below.

In sum, Defendants' proposed construction is hereby expressly rejected, and no further construction is necessary. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."); *see also O2 Micro*, 521 F.3d at 1362 ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction.").

The Court therefore hereby construes **"captures/capturing the customer image"** to have its **plain meaning**.

**B.  "storing the customer image"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Alternatively:<br>   "placing the customer image in memory" | "recording or placing a customer image in a database" |

(Dkt. No. 78 at 15; Dkt. No. 85 at 12.)  The parties submit that this disputed term appears in Claims 1 and 14 of the '843 Patent.  (Dkt. No. 78 at 15.)

Shortly before the start of the July 29, 2014 hearing, the Court provided the parties with the following preliminary construction: "placing the customer image in memory (Expressly reject Defendants' proposal of a database limitation)."

(1)  The Parties' Positions

Plaintiff argues that "Defendants' proposed construction improperly limits the invention to a single embodiment" because "[s]toring a customer image in a database is only one example of the different memory locations where the image may be saved."  (Dkt. No. 78 at 17.)  Plaintiff also notes that whereas Claim 1 recites a database, Claim 14 does not.  (*Id.* at 17-18.)  Further, Plaintiff submits, although the petitioner in the Lumondi IPR requested construction of this disputed term, the PTAB has not construed it.  (*Id.* at 19.)

Defendants respond that the specification refers to a database.  (Dkt. No. 85 at 13.)  Defendants also argue that because claim terms are generally construed consistently across all claims, the recital of a database in Claim 1 informs the meaning of the disputed term not only in Claim 1 but also in Claim 14.  (*Id.* at 14.)  Further, Defendants cite prosecution history (both during original prosecution and in the ongoing *ex parte* reexamination) in which, Defendants argue, the patentee distinguished prior art based on storing a customer image in a database.  (*Id.*

at 15-16.)  Defendants argue that the patentee presented this same argument as to both Claim 1 and Claim 14, and Defendants urge that Plaintiff's "attempt to distinguish the scope of its prosecution disclaimer relating to Claims 1 and 14" "attempts to put form over substance."  (*Id.* at 17.)  Finally, in response to Plaintiff noting that the PTAB has not construed the disputed term, Defendants respond that the PTAB applies a different claim construction standard and, moreover, the district court has a duty to resolve claim construction disputes.  (*Id.*)

Plaintiff replies by reiterating its opening arguments and by urging that Defendants "misread the statements made during prosecution and put emphasis not on the distinction that [the patentee] drew but rather on an immaterial portion of the statement."  (Dkt. No. 86 at 3-6.) Plaintiff explains that the patentee's acknowledgement that the "Maloomian" reference (United States Patent No. 4,467,349) disclosed storing at least one apparel image in a database does not amount to a disclaimer because the patentee distinguished Maloomian as storing only "at least one apparel image," not "the customer image."  (*Id.* at 4-5.)  Finally, as to the patentee's statement in the *ex parte* reexamination, Plaintiff replies that the statement explicitly refers to Claim 1 and "is merely a recitation of the requirements of claim 1 and a brief explanation of what the database recited in claim 1 stores."  (*Id.* at 5.)

At the July 29, 2014 hearing, Defendants argued that Maloomian discloses storing a customer image.  *See* Maloomian at 3:16-21, 4:21-24 & 5:22-28.  Defendants concluded that the patentee distinguished Maloomian as lacking a database.

(2)  Analysis

As a threshold matter, although Plaintiff submits that no construction is necessary, the parties have presented a "fundamental dispute regarding the scope of a claim term," and the Court has a duty to resolve that dispute.  *O2 Micro*, 521 F.3d at 1362-63.

- 14 -

Claim 1 of the '843 Patent is quoted above within the discussion of the term

"captures/capturing the customer image."  Claim 14 of the '843 Patent recites (emphasis added):

> 14.  A method for manipulating a customer image corresponding to a customer, the method comprising:
> capturing the customer image;
> generating a composite image comprising the customer image and one of at least one apparel style image corresponding to a potential purchase item;
> displaying the composite image thereby allowing the customer to assess the potential purchase item without having to try it on; and
> *storing the customer image*,
> wherein the step of generating the composite image further comprises retrieving the customer image in response to a request for the composite image.

On one hand, the specification discloses storing captured images in a database:

> The controller 102 is coupled to databases 106 for the storage of images captured by the image capture system 104.  Information correlating captured customer images to particular customers, as well as other data describing each customer's body type, etc. may also be stored in the databases 106.  Furthermore, the databases 106 preferably comprise stored apparel style or reference images described in greater detail below.  Although multiple databases 106 are illustrated in FIG. 1 and referred to in this description, those having ordinary skill in the art will recognize that a single database of sufficient storage capacity could be used.
>
> * * *
>
> At step 410, the valid customer image(s) is stored in memory, for example, the database 106 of FIG. 1.
>
> * * *
>
> Additionally, the customer's image may be made available for use with other retailers having access to the databases 106.

'843 Patent at 3:25-35, 6:60-61 & 7:22-24; *see id.* at Fig. 1 (illustrating "Databases 106").

On the other hand, the specification also discloses that storage can be in "memory,"

which may be in a database or may be "short term" or in a camera or cell phone:

> As the images are obtained, they are preferably stored directly to memory residing in a computer or similar device.  Alternatively, the images could be stored within the one or more cameras for subsequent downloading.

* * *

At step 410, the valid customer image(s) is stored in memory, for example, the database 106 of FIG. 1.  In one embodiment of the present invention, storage may be long term, thereby allowing the customer's image to be accessed at any time, or may be short term, i.e., for the duration of a single event.

* * *

In a fifth alternative business model, the customer's captured image can be stored in a personal communication device, such as a cell phone, personal digital assistant (PDA) or palmtop computer.

*Id.* at 5:29-33, 6:60-65 & 10:13-16.

On balance, none of the disclosures in the specification justifies limiting the disputed term so as to require a "database."  Instead, use of a database is a feature of preferred embodiments that should not be imported into the claims.  *See Comark*, 156 F.3d at 1187; *see also Phillips*, 415 F.3d at 1323.

As to the prosecution history, Defendants are correct, as a general matter, that "[c]laims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."  *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995); *see Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381 (Fed. Cir. 2011) ("The patentee is bound by representations made and actions that were taken in order to obtain the patent."); *see generally Computer Docking Station Corp. v. Dell Inc.*, 519 F.3d 1366, 1374-75 (Fed. Cir. 2008).

During original prosecution of the '843 Patent, the patentee responded to rejections based on the "Maloomian" reference (United States Patent No. 4,467,349).  The patentee stated:

Independent claim 1 includes the limitation of "a database, coupled to the controller, for *storing the customer image* and at least one apparel image corresponding to the potential purchase item".  (Emphasis added)

(Dkt. No. 78, Ex. M, 4/10/2003 Response to Office Action Mailed February 27, 2003, at 2

(emphasis in original).)   The patentee then argued:

> *Maloomian teaches to store only "at least one apparel image" but not "the*
> *customer image" in a database* (corresponding to "el. 18, memory" as shown in
> Figure 1 of Maloomian).   Thus, Applicant submits that Maloomian does not
> anticipate the invention as claimed in claim 1 and asks for reconsideration.
> Because claims 2-5 and 9 depend on independent claim 1, Maloomian cannot
> form the basis for a rejection of these dependent claims based on 35 USC § 102.
> Accordingly, Applicant requests that the rejection be withdrawn for the dependent
> claims.

(*Id.* at 3 (emphasis added).)

        In the ongoing *ex parte* reexamination proceedings, Plaintiff submitted a declaration

similarly referring to a database (emphasis added):

> 6.  Independent claim 1 of the '843 patent recites an apparatus for manipulating a
> customer image corresponding to a customer.   The apparatus includes (1) a
> controller and (2) an image capture system coupled to the controller.   The image
> capture system captures the customer image of the customer and provides the
> customer image to the controller.   The apparatus includes (3) a *database* coupled
> to the controller.   The *database* stores the customer image and at least one apparel
> style image corresponding to a potential purchase item.   The apparatus includes
> (4) an image display system coupled to the controller.   The image display system
> displays a composite image that includes the customer image and any one of the
> at least one apparel style image, thereby allowing the customer to assess the
> potential purchase item without having to try it on.

> 7.  Independent claim 14 of the '843 patent recites a method for manipulating a
> customer image corresponding to a customer.   The method includes (1) capturing
> the customer image.   The method includes (2) generating a composite image
> comprising the customer image and one of at least one apparel style image
> corresponding to a potential purchase item.   The step of generating the composite
> image further comprises retrieving the customer image in response to a request for
> the composite image.   The method includes (3) displaying the composite image,
> thereby allowing the customer to assess the potential purchase item without
> having to try it on.   The method includes (4) storing the customer image.

(Dkt. No. 78, Ex. F, 2/11/2013 Decl. of Jerry W. Lennon Pursuant to 37 C.F.R. § 1.131 at ¶¶ 6-7

(p. 16 of 53 of Ex. F) (emphasis added).)

Because these references to a database explicitly pertained to Claim 1, which expressly recites a database, the patentee did not make any definitive statement that would warrant limiting the construction of "storing the customer image" so as to require a database.  *See Omega Eng'g v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on *definitive* statements made during prosecution.") (emphasis added); *see also Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) ("[D]ifferent words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.") (citation and internal quotation marks omitted).

Further, Defendants' above-noted characterization of the Maloomian reference is unpersuasive because the patentee did not distinguish Maloomian on the basis proposed by Defendants.  As quoted above, the patentee distinguished Maloomian as lacking disclosure of storing a customer image.  Indeed, the patentee used italics and quotations marks to highlight this distinction as opposed to any distinction regarding a database.  (*See* Dkt. No. 78, Ex. M, 4/10/2003 Response to Office Action Mailed February 27, 2003, at 2 ("Independent claim 1 includes the limitation of 'a database, coupled to the controller, for *storing the customer image and at least one apparel image corresponding to the potential purchase item*") (emphasis in original); *id.* at 3 ("Maloomian teaches to store only 'at least one apparel image' but not 'the customer image' in a database.").)

Also consistent with such a reading of the patentee's arguments is the patentee's amendment of Claim 14, adding the step of "storing the customer image" but *not* adding any database limitation.  (*See id.* at 1 & 6.)  At the July 29, 2014 hearing, Defendants highlighted the patentee's statement as to Claim 14 that: "*As discussed above*, Maloomian does not teach or even

suggest this limitation [of 'storing the customer image, wherein the step of generating the composite image further comprises retrieving the customer image in response to a request for the composite image']."  *Id.* at 3 (emphasis added).  Defendants argued that because the phrase "[a]s discussed above" refers to the patentee's statement that "Maloomian teaches to store only 'at least one apparel image' but not 'the customer image' in a database," the patentee thus relied on a database limitation for Claim 14 as well as for Claim 1.  (*Id.*)

        In light of the Court's finding, above, that the patentee distinguished Claim 1 over Maloomian based on storing the *customer image* rather than based on any *database* limitation, neither the phrase "[a]s discussed above" nor anything else in the patentee's discussion of Claim 14 warrants importing a database limitation into that claim.

        Defendants' proposed construction is therefore hereby rejected.  Finally, although the plain meaning of the disputed term may be readily apparent, Plaintiff's alternative proposed construction properly clarifies that the customer image is stored "in memory," as opposed to, for example, in a physical hard copy.  Also, the parties' proposals indicate agreement that "storing" means "placing."  Including these clarifications in a construction will assist the finder of fact. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) ("The terms, as construed by the court, must ensure that the jury fully understands the court's claim construction rulings and what the patentee covered by the claims.") (citation and internal quotation marks omitted).

        The Court accordingly hereby construes **"storing the customer image"** to mean **"placing the customer image in memory."**

## C.  "retrieving the customer image"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction necessary.<br><br>Alternatively:<br>   "accessing the customer image from memory" | "retrieving a customer image which has been recorded or placed in a database" |

(Dkt. No. 78 at 20; Dkt. No. 85 at 18.)  The parties submit that this disputed term appears in Claim 14 of the '843 Patent.  (Dkt. No. 78 at 20.)

Shortly before the start of the July 29, 2014 hearing, the Court provided the parties with the following preliminary construction: "Plain meaning (Expressly reject Defendants' proposal as above)."

The parties present substantially the same arguments for this disputed term as for the term "storing the customer image," discussed above.  (*See* Dkt. No. 78 at 20-22; Dkt. No. 85 at 18-19; Dkt. No. 86 at 6-7. ) At the July 29, 2014 hearing, Defendants submitted that while the meaning of "retrieving" is not disputed, Defendants' proposed construction clarifies that once a customer image has been stored in a database, it is retrieved from the same place.

For the same reasons discussed as to "storing the customer image," above, Defendants' proposal of requiring a database is hereby expressly rejected.  No further construction is necessary.  *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362 ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Finjan*, 626 F.3d at 1207.

The Court accordingly hereby construes **"retrieving the customer image"** to have its **plain meaning**.

**D.  "body type"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Alternatively:<br>    "data describing a customer's body type" | "data stored with a customer's image used to access the appropriate reference image within a group of reference images corresponding to an apparel item" |

(Dkt. No. 60, Ex. A; Dkt. No. 85 at 19.)  The parties submit that this disputed term appears in Claim 16 of the '843 Patent.  (*See* Dkt. No. 60, Ex. A.)

Plaintiff proposes this term need not be addressed because it appears in only Claim 16, which Plaintiff is no longer asserting, Plaintiff having cancelled Claim 16 in the ongoing *ex parte* reexamination proceeding.  (*See* Dkt. No. 78 at 5 n.2; *see also* Dkt. No. 86 at 1 n.1.)

Defendants responded in their briefing that "[a]sserted claims cannot be unilaterally changed based upon the yet to be completed *ex parte* reexamination proceedings."  (Dkt. No. 85 at 9 (citing P.R. 3-6(b)).)  Instead, Defendants argued, "[i]n order to make changes to any of the asserted claims or accused instrumentalities, [Plaintiff] must seek the permission of the court to amend its final Infringement Contentions served on July 25, 2013."  (*Id.*)

At the July 29, 2014 hearing, Defendants agreed that if Plaintiff filed a written notice withdrawing its assertion of Claim 16 against Defendants in the above-captioned cases, Defendants would agree that the term "body type" need not be construed.  Plaintiff filed such a notice on July 29, 2014, after the hearing.  (*See* Dkt. No. 95.)

Thus, based on Plaintiff's withdrawal of Claim 16, which is the only claim in which "body type" appears, the Court need not construe "body type."

**CONCLUSION**

The Court adopts the constructions set forth in this opinion for the disputed terms of the

patents-in-suit.

The parties are ordered that they may not refer, directly or indirectly, to each other's

claim construction positions in the presence of the jury.  Likewise, the parties are ordered to

refrain from mentioning any portion of this opinion, other than the actual definitions adopted by

the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited

to informing the jury of the definitions adopted by the Court.

**SIGNED this 1st day of August, 2014.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

**APPENDIX A**

| Term | Parties' Agreement |
|---|---|
| "controller"<br><br>(Claims 1, 4, 5 & 6) | "one or more computers or servers capable of executing software instructions stored in memory (e.g., volatile or non-volatile digital storage devices) via a suitable processor (e.g., microprocessor, microcontroller, digital signal processor or the like or combinations thereof)" |
| "apparel style image"<br><br>(Claims 1, 5, 9, 14 & 15) | "an image of a style of clothing, accessories, or any other items for which customer purchase decisions are typically based, in part, upon how the item appears when used by the customer" |
| "a trigger device . . . that detects the presence of the customer and, in response, causes the composite image to be displayed"<br><br>(Claim 6) | "a device that informs the controller of the presence of a customer automatically or based on customer input and, in response, causes the composite image to be displayed" |

(Dkt. No. 60 at 2; Dkt. No. 78 at 10.)